JUDGE WOOD

MAGISTRATE JUDGE WEISMAN

**RECEIVED**

RC

2/27/2020

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| KAABAR VENSON (M-39211), | ) | |
| | ) | |
| Plaintiff, | ) | **1:21-CV-05108** |
| | ) | |
| v. | ) | Case No.: 1:18-cv-05184 |
| | ) | |
| JERRY BUBASH, KAYLA COLEMAN, | ) | |
| MARCIN LES, TERRELL PORK, and | ) | **FILED** |
| WILLIAM BROWN, | ) | |
| | ) | |
| Defendants, | ) | FEB 2 7 2020 |

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### SECOND AMENDED COMPLAINT

NOW COMES Plaintiff, KAABAR VENSON, by Steven R. Johnson of LANGHENRY,

GILLEN, LUNDQUIST & JOHNSON, LLC as appointed counsel, and hereby states the following

causes of action against Defendants, JERRY BUBASH, KAYLA COLEMAN, MARCIN LES,

TERRELL PORK, and WILLIAM BROWN:

**Allegations Common to All Counts Regarding Plaintiff's Sexuality**

1.      It is the stated mission of the Illinois Department of Corrections to serve justice in

Illinois and increase public safety by promoting positive change in offender behavior, operating

successful reentry programs, and reducing victimization.

2.      The Prison Rape Elimination Act, 28 C.F.R. Part 115 ("PREA") was created, in

part, to protect the rights of gender non-conforming detainees from sexual abuse and/or

harassment.

3.      The prison and jail standards developed for the rules implementing PREA apply to

Stateville Correctional Center, Crest Hill, Illinois ("Stateville") and all staff employed at the

prison.

4.      Plaintiff, Kaabar Venson (M-39211), is a transgender-women in transition who is

1

currently serving time at Pontiac Correctional Center, Pontiac, Illinois.

5.      At all relevant times in the Second Amended Complaint, Plaintiff was being housed at Stateville where Defendants, Bubash, Coleman, Les, Pork and Brown worked as corrections officers.

6.      On or about February 21, 2018, Plaintiff was waiting to be taken to the prison health center when she was told by corrections officer Mack that she "needed to strip naked" and get on her tiptoes. Corrections officer Mack then ordered Plaintiff to place her buttocks against the cell bars and "spread your ass wider."

7.      When some unknown other corrections officers observed the conduct of officer Mack and he was informed his actions were inappropriate, he replied, "He's gay anyways."

8.      As a transgender-woman in transition, Plaintiff was routinely the subject of derision from corrections officers and inmates at Stateville and she was offended by the conduct and comments of officer Mack in the presence of others.

9.      Plaintiff prepared a prison grievance dated February 22, 2018 seeking a finding against officer Mack for his violation of the final prison rules and standards under PREA and for sexual assault.

10.     The grievance also noted that when Plaintiff requested a crisis intervention following the sexual assault, she was told by corrections officer Wimp to "lie your bitch ass down" but Plaintiff persisted and explained loudly to all the corrections officers present that she was not supposed to be housed with other inmates unless they were also transgender or gay under an Illinois Department of Corrections ("IDOC") finding made on or about December 4, 2017.

11.     Plaintiff directly informed corrections officers Mack, Wimp and Gerrett about the protective custody order from the IDOC and the personal safety reasons for the order following

the February 21, 2018 incident. In response the officers laughed, and corrections officer Mack stated he was going to get Plaintiff a cellmate who would beat her ass because Plaintiff "is a fag and not in a gang."

12.     Plaintiff, who had been diagnosed with serious mental illness ("SMI") by IDOC staff, responded stating she would injure herself by eating the lightbulb in her cell. In response corrections officer Gerrett told Plaintiff to "go ahead and swallow the glass" and indicated he would call for help once he "saw blood."

13.     The actions of Mack and Gerrett severely impacted the Plaintiff who then placed the wires from the light dangling inside her cell into her mouth resulting in electric shock necessitating medical treatment and additional written documentation of both Plaintiff's non-confirming gender identity and her fear for her own safety if she was not kept in protective custody.

14.     The events of February 21, 2018 and the grievance proceeding flowing therefrom placed all corrections officers in Plaintiff's cell block, including officers Bubash, Coleman, Les, Pork, and Brown, as well as the medical/mental health professionals at Stateville that treated Plaintiff on notice of both Plaintiff's non-conforming gender and serious mental health issues.

15.     In prisons, like Stateville, inmates communicate both verbally and in written messages commonly referred to as "kites".

16.     Before and after the February 21, 2018 incident, Plaintiff was not only sexually harassed and threatened by inmates verbally when she was moved within the prison, but also in kites which broadcast a "K.O.S." or kill on sight order distributed among gang members at Stateville based upon Plaintiff's sexuality.

17.     Corrections officers Garrett and Mackowiak were assigned to Plaintiff's cell block and each was personally informed by Plaintiff of her non-conforming gender, the December 2017

3

IDOC order mandating protective custody and Plaintiff's credible fear for her personal safety from other inmates because of kites threatening to kill Plaintiff for her sexual orientation.

18.    Despite knowing the basis for Plaintiff's fears for her personal safety and the IDOC finding that Plaintiff be kept in protective custody because of her sexuality, corrections officers Gerrett and Mackowiak placed another inmate in her cell (Gehret) who threatened to "beat down" Plaintiff in front of the officers because he "can't be in no cell with a fag."

19.    Plaintiff pleaded with Gerrett and Mackowiak to placed away from inmate Gehret and requested to speak with a mental health crisis team member but officers Gerrett and Mackowiak ignored Plaintiff's requests. Mackowiak laughed at Plaintiff and stated, "if your cellie gets into it with you, no officers will come break it up" and "your faggot ass needs to learn how to fight."

20.    The sexual abuse and personal threats from inmates and staff at Stateville became part of daily life for Plaintiff while housed in Stateville, and no prison official, including Defendants Bubash, Coleman, Les, Pork and Brown, had the courage to stand-up to the machismo within the prison culture at Stateville and stop the violations of Plaintiff's civil rights.

## Jurisdiction and Venue

21.    This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation of Plaintiff's Constitutional Rights under color of law.

22.    This Court has jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1367; and venue is proper under 28 U.S.C. Section 1391(b). The events giving rise to the claims asserted herein occurred in Statesville, which is located in this district and, on information and belief, the defendants violated Plaintiff's civil rights are domiciled in this district.

### The March 2, 2018 Incident

23.     On March 2, 2018, Plaintiff was housed in segregation and looking forward to getting yard time after being confined to her cell.

24.     Inmates were required to sign-up for yard time in advance for security and other purposes.

25.     As Plaintiff was hand-cuffed in line with other inmates waiting to enter the yard, two other inmates, Sanders (S02150) and Spratt (B80562), saw Plaintiff and yelled to correction officers Bubash and Les, as well as Lt. Coleman to allow them to get yard time with Plaintiff to "take care of business."

26.     Despite having failed to sign-up for yard time in advance and the obvious nature of the threat made to Plaintiff, Bubash, Coleman, and Les allowed Sanders and Spratt to be given yard time with Plaintiff.

27.     Plaintiff knew these two inmates wished to do her harm based upon her non-conforming gender and complained loudly to Bubash, Les and Coleman not to let these inmates out in the yard with her because she feared for her life.

28.     Plaintiff begged officer Les to keep Spratt and Sanders away from her because they intended to beat her for leaving the gang and announcing her non-conforming gender identity.  Officer Les looked Plaintiff in the eyes and said, "Good luck in the yard."

29.     Lt. Coleman reassured Plaintiff about her safety and stated, "We can't keep you separate in the yard, but don't worry, you will be okay."

30.     Plaintiff expressly informed Lt. Coleman of about the IDOC protective custody finding and the Kill on Sight order out for her since she left her gang after openly announcing her non-conforming gender identity.

5

31.     As Plaintiff was exiting into the yard, she passed by Bubash who laughed and stated, "Good luck, you will need to take care of yourself."

32.     As soon as all the inmates were in the yard, Sanders and Spratt continued to threaten Plaintiff with "a beat down to your faggot ass" and there "is no place to hide in the yard."

33.     Plaintiff walked away from Sanders and Spratt in an attempt to avoid conflict, but they followed and attacked her with their fists and feet, knocking her to the ground where she balled up her body in an attempt to protect her head and chest.

34.     Neither Bubash nor Coleman made any effort to protect Plaintiff from a very specific and credible threat to her safety when simply denying Sanders and Spratt access to the yard or escorting Plaintiff within the yard would have prevented the beat-down she received for being a transgender woman in transition.

35.     A tower guard, Officer Cabrera, observed the beating and yelled for the inmates to stop.  While Sanders continued kicking and punching Plaintiff, Spratt responded, "It's okay, we just messin' around."

36.     Plaintiff screamed for help and the beating finally stopped but not before she suffered a busted and bleeding lip, bruises to her head, back, arms and legs.  The beating also resulted in Plaintiff suffering from migraine headaches.

37.     When the group was taken back inside, Plaintiff heard Officer Bubash ask Spratt and Sanders, "Did you get him good?"

38.     Despite the large discrepancy is physical size and the pre-beating threats from Sanders and Spratt, the correction officers present wrote up Plaintiff for an "assault on Inmate Spratt and Inmate Sanders."  After writing a formal grievance, the corrections officers dropped

the assault charge down to "fighting" and issued punishment to Plaintiff.

### Count I – Failure to Protect Detainee by Bubash

39.     Plaintiff adopts and realleges paragraphs 1-38 as paragraph 3 of Count I.

40.     Corrections officers owe a duty to protect detainees from sexual abuse, sexual harassment and physical abuse from other inmates inside a prison; and failure to take reasonable action to prevent harassment or abuse subjects the officer to personal liability.

41.     Officer Bubash showed deliberate indifference and breached his duty to protect Plaintiff from the beating she received on or about March 2, 2018 by acting or failing to act under the color of law and within the scope of his employment with the IDOC in one or more of the following ways:

        a.     allowing inmates Spratt and Sanders to be in the yard with Plaintiff despite knowing her sexual orientation and the threats made against her safety by inmates Spratt and Sanders precisely because of her non-confirming gender identity;

        b.     failing to prohibit inmates Spratt and Sanders from attacking Plaintiff in the yard when he knew the inmates were making specific and credible threats to Plaintiff's safety before allowing them into the prison yard;

        c.     failing to escort Plaintiff in the yard to protect her from the real and credible threats to her personal safety made by inmates Spratt and Sanders; and

        d.     failing to take any of the reasonable opportunities available to prevent the beating administered to Plaintiff by inmates Spratt and Sanders for Plaintiff's non-conforming gender identity.

42.     Defendant actively participated in the harassment of Plaintiff based upon her non-conforming gender identity resulting in purposeful discrimination in violation of her

7

constitutional rights causing emotional distress.

43.     As a direct and proximate result of the aforementioned breach or breaches of duty by Defendant, Plaintiff has been subjected to cruel and unusual punishment in violation of her constitutional rights causing physical injury to her person and improperly subjecting her to derision and mental abuse from inmates and staff at the prison.

44.     The actions and failures to act of Defendant were undertaken with malice, willfulness, and deliberate indifference to the constitutional rights of Plaintiff resulting in substantial physical and psychological injuries for which Plaintiff is entitled to monetary compensation.

### Count II – Intentional Infliction of Emotional Distress by Bubash

45.     Plaintiff hereby adopts and realleges paragraphs 1-44 as paragraph 45 of Plaintiff's Second Amended Complaint.

46.     The actions of Defendant Bubash as set forth herein were extreme and outrageous, and intended to cause, or were in reckless disregard of the probability that his conduct would cause, severe emotional distress to Plaintiff.

47.     The actions and conduct of Defendant Bubash did directly and proximately cause severe emotional distress to Plaintiff in violation of Illinois law.

48.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others, including Plaintiff.

49.     As a direct and proximate result of Defendant's conduct, Plaintiff has and will continue to suffer severe mental anguish, pain, depression, self-loathing, embarrassment and other psychological injuries for which she is entitled to be compensated monetarily by Defendant.

8

## Count III – Indemnification for State Law Claim by Bubash

50.     Plaintiff hereby adopts and realleges paragraphs 1-49 as paragraph 50 of Plaintiff's Second Amended Complaint.

51.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

52.     At all relevant times, Officer Bubash was an employee of the IDOC acting within the scope of his employment while committing the misconduct described herein.

## Count IV – Failure to Protect Detainee by Les

53.     Plaintiff adopts and realleges paragraphs 1-38 as paragraph 53 of Count IV of the Second Amended Complaint.

54.     Corrections officers owe a duty to protect detainees from sexual abuse, sexual harassment and physical abuse from other inmates inside a prison; and failure to take reasonable action to prevent harassment or abuse subjects the officer to personal liability.

55.     Officer Les showed deliberate indifference and breached his duty to protect Plaintiff from the beating she received on or about March 2, 2018 by acting or failing to act under the color of law and within the scope of his employment with the IDOC in one or more of the following ways:

a.      allowing inmates Spratt and Sanders to be in the yard with Plaintiff despite knowing her sexual orientation and the threats made against her safety by inmates Spratt and Sanders precisely because of her non-confirming gender identity;

b.      failing to prohibit inmates Spratt and Sanders from attacking Plaintiff in the yard when he knew the inmates were making specific and credible threats to Plaintiff's safety

9

before allowing them into the prison yard;

        c.      failing to escort Plaintiff in the yard to protect her from the real and credible threats to her personal safety made by inmates Spratt and Sanders; and

        d.      failing to take any of the reasonable opportunities available to prevent the beating administered to Plaintiff by inmates Spratt and Sanders for Plaintiff's non-conforming gender identity.

56.      Defendant actively participated in the harassment of Plaintiff based upon her non-conforming gender identity resulting in purposeful discrimination in violation of her constitutional rights causing emotional distress.

57.      As a direct and proximate result of the aforementioned breach or breaches of duty by Defendant, Plaintiff has been subjected to cruel and unusual punishment in violation of her constitutional rights causing physical injury to her person and improperly subjecting her to derision and mental abuse from inmates and staff at the prison.

58.      The actions and failures to act of Defendant were undertaken with malice, willfulness, and deliberate indifference to the constitutional rights of Plaintiff resulting in substantial physical and psychological injuries for which Plaintiff is entitled to monetary compensation.

### Count V – Intentional Infliction of Emotional Distress by Les

59.      Plaintiff hereby adopts and realleges paragraphs 1-49 as paragraph 59 of Plaintiff's Second Amended Complaint.

60.      The actions of Defendant Les as set forth herein were extreme and outrageous, and intended to cause, or were in reckless disregard of the probability that his conduct would cause, severe emotional distress to Plaintiff.

10

61.     The actions and conduct of Defendant Les did directly and proximately cause severe emotional distress to Plaintiff in violation of Illinois law.

62.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others, including Plaintiff.

63.     As a direct and proximate result of Defendant's conduct, Plaintiff has and will continue to suffer severe mental anguish, pain, depression, self-loathing, embarrassment and other psychological injuries for which she is entitled to be compensated monetarily by Defendant.

### Count VI – Indemnification for State Law Claim by Les

64.     Plaintiff hereby adopts and realleges paragraphs 1-49 as paragraph 64 of Plaintiff's Second Amended Complaint.

65.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

66.     At all relevant times, Officer Les was an employee of the IDOC acting within the scope of his employment while committing the misconduct described herein.

### Count VII – Failure to Protect Detainee by Lt. Coleman

67.     Plaintiff adopts and realleges paragraphs 1-38 as paragraph 67 of Count VII of the Second Amended Complaint.

68.     Corrections officers owe a duty to protect detainees from sexual abuse, sexual harassment and physical abuse from other inmates inside a prison; and failure to take reasonable action to prevent harassment or abuse subjects the officer to personal liability.

69.     Lt. Coleman showed deliberate indifference and breached her duty to protect

11

Plaintiff from the beating she received on or about March 2, 2018 by acting or failing to act under the color of law and within the scope of her employment with the IDOC in one or more of the following ways:

        a.      allowing inmates Spratt and Sanders to be in the yard with Plaintiff despite knowing her sexual orientation and the threats made against her safety by inmates Spratt and Sanders precisely because of her non-confirming gender identity;

        b.      failing to prohibit inmates Spratt and Sanders from attacking Plaintiff in the yard when he knew the inmates were making specific and credible threats to Plaintiff's safety before allowing them into the prison yard;

        c.      failing to escort Plaintiff in the yard to protect her from the real and credible threats to her personal safety made by inmates Spratt and Sanders; and

        d.      failing to take any of the reasonable opportunities available to prevent the beating administered to Plaintiff by inmates Spratt and Sanders for Plaintiff's non-conforming gender identity.

70.      Defendant actively participated in the harassment of Plaintiff based upon her non-conforming gender identity resulting in purposeful discrimination in violation of her constitutional rights causing emotional distress.

71.      As a direct and proximate result of the aforementioned breach or breaches of duty by Defendant, Plaintiff has been subjected to cruel and unusual punishment in violation of her constitutional rights causing physical injury to her person and improperly subjecting her to derision and mental abuse from inmates and staff at the prison.

72.      The actions and failures to act of Defendant were undertaken with malice, willfulness, and deliberate indifference to the constitutional rights of Plaintiff resulting in

substantial physical and psychological injuries for which Plaintiff is entitled to monetary compensation.

### Count VIII – Intentional Infliction of Emotional Distress by Lt. Coleman

73.     Plaintiff hereby adopts and realleges paragraphs 1-44 as paragraph 73 of Plaintiff's Second Amended Complaint.

74.     The actions of Defendant Coleman as set forth herein were extreme and outrageous, and intended to cause, or were in reckless disregard of the probability that his conduct would cause, severe emotional distress to Plaintiff.

75.     The actions and conduct of Defendant Coleman did directly and proximately cause severe emotional distress to Plaintiff in violation of Illinois law.

76.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others, including Plaintiff.

77.     As a direct and proximate result of Defendant's conduct, Plaintiff has and will continue to suffer severe mental anguish, pain, depression, self-loathing, embarrassment and other psychological injuries for which she is entitled to be compensated monetarily by Defendant.

### Count IX – Indemnification for State Law Claim by Lt. Coleman

78.     Plaintiff hereby adopts and realleges paragraphs 1-48 as paragraph 78 of Plaintiff's Second Amended Complaint.

79.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

80.     At all relevant times, Lt. Coleman was an employee of the IDOC acting within the

scope of her employment while committing the misconduct described herein.

## Count X – Failure to Protect Detainee by Sgt. Pork and Lt. Brown

81.    Plaintiff adopts and realleges paragraphs 1-38 as paragraph 81 of Count X of the Second Amended Complaint.

82.    Corrections officers owe a duty to protect detainees from sexual abuse, sexual harassment and physical abuse from other inmates inside a prison; and failure to take reasonable action to prevent harassment or abuse subjects the officer to personal liability.

83.    On or about May 23, 2018, Plaintiff was housed in cell L-W-5 at Stateville when she Sgt. Pork and Officer Bubash entered her cell and forcibly stripped Plaintiff for a search. Finding no contraband, Pork and Bubash placed Plaintiff in a waist-chain and took her to speak with Internal Affairs Officer Perez about Plaintiff's PREA Complaints against Stateville staff which were being ignored.

84.    While reporting the history of sexual abuse, sexual harassment and physical abuse she had received as a transgender women in transition at Stateville, Perez began to make weird faces and stated Plaintiff's claims were "bullshit" and that it was up to Plaintiff to prepare the "bullshit reports" to make a PREA claim before exiting the room.

85.    Sgt. Pork began to lead Plaintiff from the meeting room when Lt. Brown came up to Plaintiff screaming, "Fuck all this shit." Brown and Pork then dragged Plaintiff to the bullpen and threw her on the ground before stomping on her so hard she urinated on herself.

86.    Pork and Brown then began to forcibly remove Plaintiff's clothing before Brown sexually assaulted Plaintiff by spreading her legs and buttocks and spitting on her genital and anal areas.

87.    Sgt. Pork took no action to stop the sexual assault by Lt. Brown. Instead, Pork

14

laughed and stated, "I know you like that" before threatening Plaintiff 's safety if she did not remain silent about the sexual assault.

88. Sgt. Pork showed deliberate indifference and breached his duty to protect Plaintiff from the sexual assault she received on or about May 23, 2018 by acting or failing to act under the color of law and within the scope of his employment with the IDOC in one or more of the following ways:

a. allowing Lt. Brown to spread Plaintiff's legs and buttocks before spitting on Plaintiff's genitals and anus in violation of PREA and Illinois state law against sexual assault;

b. failing to prevent Lt. Brown from sexually assaulting Plaintiff when he knew his conduct was wholly inappropriate under prison rules; and

c. failing to take any of the reasonable opportunities available to prevent the sexual assault from occurring as "punishment" for Plaintiff's non-conforming gender identity and filing PREA complaints against Stateville staff.

89. Lt. Brown showed deliberate indifference and breached his duty to protect Plaintiff from the sexual harassment she received from Sgt. Pork on or about May 23, 2018 by acting or failing to act under the color of law and within the scope of his employment with the IDOC in one or more of the following ways:

a. allowing Sgt. Pork to verbally humiliate Plaintiff because of her non-confirming gender identity in violation of PREA;

b. failing to prevent Sgt. Pork from sexually harassing Plaintiff when he knew this conduct was wholly inappropriate under prison rules and Illinois state law against sexual harassment; and

c. failing to take any of the reasonable opportunities available to prevent the

15

sexual harassment from occurring as "punishment" for Plaintiff's non-conforming gender identity and filing PREA complaints against Stateville staff.

90.     Defendants actively participated in the sexual assault and harassment of Plaintiff based upon her non-conforming gender identity resulting in purposeful discrimination in violation of her constitutional rights causing emotional distress.

91.     As a direct and proximate result of the aforementioned breach or breaches of duty by Defendants, Plaintiff has been subjected to cruel and unusual punishment in violation of her constitutional rights causing physical injury to her person and improperly subjecting her to derision and mental abuse from inmates and staff at the prison.

92.     The actions and failures to act of Defendants were undertaken with malice, willfulness, and deliberate indifference to the constitutional rights of Plaintiff resulting in substantial physical and psychological injuries for which Plaintiff is entitled to monetary compensation.

**Count XI – Intentional Infliction of Emotional Distress by Sgt. Pork and Lt. Brown**

93.     Plaintiff hereby adopts and realleges paragraphs 1-44 as paragraph 93 of Plaintiff's Second Amended Complaint.

94.     The actions of Defendants Pork and Brown as set forth herein were extreme and outrageous, and intended to cause, or were in reckless disregard of the probability that this conduct would cause, severe emotional distress to Plaintiff.

95.     The actions and conduct of Defendants Pork and Brown did directly and proximately cause severe emotional distress to Plaintiff in violation of Illinois law.

96.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others, including Plaintiff.

16

97.     As a direct and proximate result of Defendants' conduct, Plaintiff has and will continue to suffer severe mental anguish, pain, depression, self-loathing, embarrassment and other psychological injuries for which she is entitled to be compensated monetarily by Defendants.

### Count XII – Indemnification for State Law Claim Against Pork and Brown

98.     Plaintiff hereby adopts and realleges paragraphs 1-48 as paragraph 98 of Plaintiff's Second Amended Complaint.

99.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

100.    At all relevant times, Sgt. Pork and Lt. Brown were employees of the IDOC acting within the scope of their employment while committing the misconduct described herein.

WHEREFORE, Plaintiff, KAABAR VENSON, prays this Honorable Court enter judgment in her favor and against Defendants, BUBASH, COLEMAN, LES, PORK and BROWN, awarding compensatory damages, costs and attorney's fees, along with punitive damages against each of the individual defendants in their individual capacities, as well as any other relief this Court deems appropriate under the circumstances established at trial.

KAABAR VENSON, Plaintiff

By: /s/ *Steven R. Johnson*
Attorney for Plaintiff

Steven R. Johnson, Esq.
ARDC # 6208989
**Langhenry, Gillen, Lundquist & Johnson LLC**
311 South County Farm Road, Suite L
Wheaton, Illinois 60187
(630) 653-5775
sjohnson@lglfirm.com

17

## CERTIFICATE OF SERVICE UPON PLAINTIFF

I, the undersigned, an attorney, state that I caused to be served the foregoing with enclosures referred to thereon, by mailing a copy to the Plaintiff at Pontiac Correctional Center before 5:00 p.m. on the _27th_ day of February 2020.

/s/ *Steven R. Johnson*

18